**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sergio Mireles Aguado,<br><br>  Plaintiff,<br><br>v.<br><br>XL Insurance America; Intercare Holdings, Inc.; Maria E. Flores; and Saul Rodriguez,<br><br>  Defendants. | No. CV-23-02528-PHX-DGC<br><br>**ORDER** |

Plaintiff Sergio Mireles Aguado asserts a bad faith tort claim against Defendant XL Insurance America ("XL Insurance") and aiding and abetting claims against Defendants Intercare Holdings, Inc. ("Intercare"), Maria Flores, and Saul Rodriguez. Intercare has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 13. The motion is fully briefed and no party requests oral argument. For reasons stated below, the Court will grant the motion.[1]

**I.  Background.**

Plaintiff's complaint contains the following allegations. *See* Doc. 1-1 at 2-15. XL Insurance provides employees in Arizona with coverage under the Arizona Workers' Compensation Act. Intercare is the third-party administrator that processes insurance

---

[1] XL Insurance has filed an answer to the complaint, and takes no position on Intercare's motion. Docs. 6, 16. Flores and Rodriguez waived service of process and have until March 8, 2024 to answer or otherwise respond to the complaint. Docs. 21, 22.

1

claims on behalf of XL Insurance. Flores and Rodriquez are employees of Intercare. *Id.* ¶¶ 3-6, 30, 38.

Plaintiff filed a workers' compensation claim after suffering an injury while working for D & J Packing on January 9, 2021. *Id.* ¶ 9. Defendants accepted the claim on April 7, 2021. On May 19, 2022, Defendants issued a notice terminating Plaintiff's benefits based on the assertion that he had left the state without the permission of the Industrial Commission of Arizona ("ICA"). On June 10, 2022, Defendants rescinded the notice but suspended Plaintiff's benefits for same reason. *Id.* ¶ 10.

Plaintiff was forced to hire an attorney and obtain a hearing before the ICA, at which Defendants failed to appear. Plaintiff testified that he did not leave Arizona for a continuous two-week period. The ICA found Plaintiff's testimony to be credible and awarded payment of all benefits. *Id.* ¶¶ 12-13.

Defendants then assigned a new adjuster to the claim and disputed the benefits owed to Plaintiff by requiring him to undergo an independent medical exam. The sole purpose of the exam was to manufacture a new reason to delay and deny payment of benefits. *Id.* ¶ 14.

Plaintiff claims that Defendants chose to discontinue payment of benefits without an adequate investigation or a reasonable basis and otherwise acted in bad faith in processing the claim. *Id.* ¶¶ 11, 15-16.

## II. Rule 12(b)(6) Standard.

A successful motion to dismiss under Rule 12(b)(6) must show that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). While a complaint's factual allegations need not be detailed, surviving a motion to dismiss "requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### III. Discussion.

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002). The duty imposed by the implied covenant "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement. The duty arises by operation of law but exists by virtue of a contractual relationship." *Id.* (citing *Rawlings v. Apodaca*, 726 P.2d 565, 569-70 (Ariz. 1986)).

An insured may seek damages for the insurer's breach of the duty by asserting a claim for the tort of bad faith. *See Rawlings*, 726 P.2d at 574. In this context, "[t]he tort of bad faith arises when the insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'" *Zilisch v. State Farm Mut. Auto. Ins.*, 995 P.2d 276, 279 (Ariz. 2000) (quoting *Noble v. Nat'l Am. Life Ins.*, 624 P.2d 866, 868 (Ariz. 1981)).

Plaintiff alleges in count one that XL Insurance committed the tort of bad faith by refusing to properly investigate and promptly pay Plaintiff's workers' compensation claim. Doc. 1-1 at 2-15, ¶ 20. Plaintiff alleges in count two that Intercare is liable for the tort of aiding and abetting because it substantially assisted or encouraged XL Insurance in delaying and denying the claim. *Id.* ¶ 27.

Intercare argues that count two fails to state a claim for relief because it alleges nothing more than the same conduct underpinning the bad faith claim asserted against XL Insurance. Doc. 13 at 2. In support, Intercare relies on several decisions from courts in this District dismissing aiding and abetting claims against individual adjusters or third-party administrators where the claims allege no action separate from the conduct giving rise to the bad faith claim against the insurer. *Id.* at 2, 8-10 (citing *Young v. Liberty Mut. Grp.*, No. CV-12-2302-PHX-JAT, 2013 WL 840618, at *3 (D. Ariz. Mar. 6, 2013); *Ortiz*

*v. Zurich Am. Ins.*, No. CV-13-02097-PHX-JAT, 2014 WL 1410433, at *3 (D. Ariz. Apr. 11, 2014); *Lambert v. Liberty Mut. Fire Ins.*, No. 2:14-CV-00521-JWS, 2014 WL 5432154, at *2 (D. Ariz. Oct. 24, 2014); *Rosso v. Liberty Ins.*, No. CV-16-00860-PHX-DLR, 2016 WL 4013614, at *2-3 (D. Ariz. July 27, 2016); *Centeno v. Am. Liberty Ins.*, No. CV-18-01059-PHX-SMB, 2019 WL 568926, at *3 (D. Ariz. Feb. 12, 2019); *Garibaldi v. Everest Nat'l Ins.*, No. CV-19-02558-DLR, 2019 WL 12287472, at *1 (D. Ariz. Oct. 7, 2019)).

Plaintiff counters with other decisions from courts in this District, including decisions from the undersigned judge, that denied dismissal of aiding and abetting claims in this context. Doc. 14 at 2, 5-9 (citing *Morrow v. Bos. Mut. Life Ins.*, No. CIV. 06-2635-PHX-SMM, 2007 WL 3287585, at *5 (D. Ariz. Nov. 5, 2007); *Pimal Prop. v. Cap. Ins. Grp.*, No. CV11-02323-PHX-DGC, 2012 WL 608392, at *6 (D. Ariz. Feb. 27, 2012); *Inman v. Wesco Ins.*, No. CV-12-02518-PHX-GMS, 2013 WL 2635603, at *3-4 (D. Ariz. June 12, 2013); *Miller v. York Risk Servs.*, No. 2:13-CV-1419 JWS, 2013 WL 6442764, at *5 (D. Ariz. Dec. 9, 2013); *Wilson v. Accident Fund Gen. Ins.*, No. 2:13-CV-2012-HRH, 2013 WL 6670330, at *1-3 (D. Ariz. Dec. 18, 2013); *Haney v. ACE Am. Ins.*, No. CV-13-02429-PHX-DGC, 2014 WL 1230503, at *4-5 (D. Ariz. Mar. 25, 2014); *Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1170 (D. Ariz. Aug. 26, 2014); *Gastelo v. Wesco Ins.*, No. CV-18-02659-PHX-MTL, 2020 WL 1285912, at *3 (D. Ariz. Mar. 18, 2020); *Hoffman v. Cincinnati Ins.*, No. CV-21-00106-TUC-JCH, 2021 WL 4962648, at *3 (D. Ariz. Oct. 26, 2021)).

Having carefully considered the relevant legal authority and the complaint's allegations, the Court concludes that Plaintiff has failed to state a viable aiding and abetting claim against Intercare.

### A.  Aiding and Abetting Under Arizona Law.

"Arizona recognizes aiding and abetting as embodied in [Restatement (Second) of Torts] § 876(b), that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." *Wells Fargo*, 38 P.3d at 23. An aiding and abetting

claim requires proof of three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach. *Id.*; *see also* RAJI (CIVIL) 7th Intentional Torts 23, Aiding and Abetting Tortious Conduct (listing the three elements set forth in *Wells Fargo*).

Although courts in this District often have held that Arizona law would permit a claim against an adjuster or a third-party administrator for aiding and abetting the insurer's bad faith conduct, no conclusive case law exists. Thus, whether Arizona law would recognize such a tort remains unclear. *See Rogers v. Emps. Ins. Co. of Wausau*, No. CV-19-01693-PHX-SRB, 2019 WL 13198123, at *2 (D. Ariz. July 1, 2019) ("It remains unclear whether an aiding and abetting claim may be made against an individual adjuster or a third-party administrator."); *Whitcomb v. Twin City Fire Ins.*, No. CV-20-01770-PHX-MTL, 2020 WL 6699499, at *4 (D. Ariz. Nov. 13, 2020) ("[C]ourts in this district have expressed skepticism about the viability of aiding and abetting claims against insurance adjusters"); *see also Lambert*, 2014 WL 5432154, at *2 ("[T]he question presented here is not whether either an employer or an employee may be subject to liability for the employee's torts, it is whether an employee can commit the tort of aiding and abetting her employer's bad faith if both alleged torts are based on the same acts.").[2]

Even assuming Arizona law would recognize such a tort, many cases in this District have held that for an aiding and abetting claim against an adjuster or a third-party administrator to be viable, "the plaintiff 'must allege some action' taken 'separate and apart from the facts giving rise' to a claim against the insurer." *Whitcomb*, 2020 WL 6699499,

---

[2] An unpublished decision from the Arizona Court of Appeals holds that such a claim is not viable. *See Bennett v. Ins. Co. of State of Penn.*, No. 1 CA-CV 10-0815, 2012 WL 424913, at *8 (Ariz. Ct. App. Feb. 9, 2012) ("Simply put, the fact that ICSOP could not delegate its duty to act in good faith to AIG does not mean there is a legal distinction between the actions of AIG and ICSOP. Further, even if we could see a distinction, . . . the Bennetts' bad faith claim is founded entirely on the conduct of AIG, not ICSOP, and thus AIG could not 'know that the primary tortfeasor's conduct constituted a breach of duty.' We therefore affirm the superior court's grant of summary judgment on aiding and abetting.") (cleaned up).

at *3 (quoting *Centeno*, 2019 WL 568926, at *3); *see Lambert*, 2014 WL 5432154, at *3 ("[T]he plaintiff must not only allege actions that constitute a breach of the insurer's duty, but also separate actions performed by the adjuster that substantially assisted or encouraged the breach."); *Rogers*, 2019 WL 13198123, at *2 (same); *Swift v. Wesco Ins.*, No. CV-18-01531-PHX-JJT, 2018 WL 11323085, at *2 (D. Ariz. Sept. 24, 2018) (same); *Kubli v. AmTrust Ins. Co. of Kan.*, No. CV-18-02053-PHX-JGZ (MSA), 2019 WL 13196105, at *2 (D. Ariz. Oct. 30, 2019) (same); *Midtown Hotel Grp. v. Selective Ins. Co. of Am.*, No. CV-22-01395-PHX-JAT, 2023 WL 3603677, at *8 (D. Ariz. May 23, 2023) (same); *see also Counts v. Tech. Ins.*, No. CV-18-00488-TUC-JAS, 2019 WL 13195132, at *2 (D. Ariz. July 12, 2019) ("There must be some distinction between the primary tort and the aiding and abetting conduct. Aiding and abetting is derivative in the sense that absent a predicate primary tort, there can be no claim for aiding and abetting which is a secondary form of liability.").

The Court agrees with the "separate action" rule "as stated and applied in *Centeno* and other cases in this [D]istrict." *Kubli*, 2019 WL 13196105, at *2-3 (collecting cases and explaining that the rule is consistent with Restatement § 876(b), which "clearly contemplates two actors engaging in separate conduct") (citing Restatement § 876 cmt. b, illus. 4-11); *see also Bussen v. N. Pointe Ins.*, No. CV-20-00486-PHX-JJT, 2021 WL 778536, at *2 (D. Ariz. Mar. 1, 2021) ("The *Lemaster* case, in which this Court granted summary judgment against a plaintiff alleging aiding and abetting claims against an individual insurance adjuster, is joined by numerous recent cases in this District that reinforce the determination that a separate action is required.").[3]

---

[3] Some cases have stated that the separate action giving rise to the aiding and abetting claim must be an independent tortious act. *See e.g.*, *Young*, 2013 WL 840618, at *3 ("In order for Mr. Dumas and Liberty Mutual to have committed 'tortious acts in concert,' there must be some factual allegation showing a separate tortious act was committed by Mr. Dumas."). This is not correct. "One can be liable for aiding and abetting another's tort without having committed an independent tort in the first instance. . . . Indeed, that is what makes aiding and abetting 'a theory of secondary liability.'" *Johnson v. Owners Ins.*, No. CV-16-00845-PHX-NVW, 2016 WL 4181230, at *5 (D. Ariz. Aug. 8, 2016) (quoting *Wells Fargo*, 38 P.3d at 23). What is more, *Young* relied on Restatement § 876(a), which addresses situations where two or more persons commit tortious acts in concert with the other. 2013 WL 840618, at *2. Restatement § 876(b), by contrast,

6

**B.     The Complaint Fails to State an Aiding and Abetting Claim.**

Plaintiff contends that he has stated a viable aiding and abetting claim because Intercare committed acts separate from those taken by XL insurance.  Doc. 14 at 5.  But Intercare's alleged actions constitute the same conduct giving rise to the bad faith claim against XL Insurance.

As an initial matter, the complaint's ubiquitous use of the collective term "Defendants" undermines Plaintiff's contention that Intercare committed separate acts that aided and abetted actions taken by XL Insurance.  The complaint's background section alleges that "Defendants" – meaning both XL Insurance and Intercare – terminated and suspended Plaintiff's benefits without an adequate investigation or a reasonable basis, failed to appear at the ICA hearing, assigned Plaintiff's claim to a new adjuster, and required the independent medical exam.  Doc. 1-1 at 2-15, ¶¶ 10-11, 13-14.  The background section further alleges that "Defendants" engaged in wrongful conduct by: (1) failing to conduct a reasonable investigation of Plaintiff's claim; (2) failing to timely acknowledge the nature and extent of Plaintiff's injury; (3) creating pretextual reasons to deny or delay payment of benefits; (4) ignoring information favorable to Plaintiff's claim; and (5) failing to promptly pay medical and financial benefits in accordance with Arizona law.  *Id.* ¶ 16(a)-(h).  The bad faith claim asserted against XL Insurance in count one alleges similar acts and omissions committed by "Defendants."  *Id.* ¶ 21(a)-(i).  And the aiding and abetting claim in count two alleges that Intercare knew that both "XL Insurance and Intercare" denied or delayed Plaintiff's claim without a reasonable basis.  *Id.* ¶ 26.

The sole factual allegation regarding Intercare alone is that it ignored phone calls and emails explaining that Plaintiff never left Arizona for more than two weeks.  *Id.* ¶ 12.  But ignoring information favorable to Plaintiff's claim is one of the acts giving rise to the bad faith claim against XL Insurance.  *See id.* ¶ 16(f); *see also id.* ¶ 22 ("Defendants' acts

---

provides that a person aids and abets another's tortious conduct if he knows the other's conduct constitutes a breach of duty and "gives substantial assistance or encouragement to the other so to conduct himself[.]"

7

and omissions, including those described above violate the common law duties of good faith and fair dealing owed to [Plaintiff]").

Because the complaint alleges no action "taken by [Intercare] that is separate and apart from the facts giving rise to the claim against [XL Insurance], Plaintiff has failed to state a claim for aiding and abetting against [Intercare]." *Centeno*, 2019 WL 568926, at *3; *see Kubli*, 2019 WL 13196105, at *3 ("Review of the complaint reveals that Plaintiff's bad-faith claim against Amtrust is predicated entirely on the conduct of Greer. (*See* Doc. 1, ¶¶ 10-13 (alleging that 'Greer and Amtrust' failed to pay benefits, that 'Defendants' delayed medical treatment, and that 'Defendants' failed to communicate with Plaintiff or his attorneys)). Because that same conduct is the basis for Plaintiff's aiding-and-abetting claim against Greer, Plaintiff has failed to state a claim for aiding and abetting."); *Midtown Hotel*, 2023 WL 3603677, at *8-9 ("The [complaint] does specify acts that Hartford allegedly committed to aid and abet Selective's alleged bad faith. It states that Hartford failed to: conduct a prompt, adequate, or competent investigation; promptly approve payments; provide a reasonable assessment of the damages; and include all damages incurred in the incident. But previously in the [complaint] Midtown also alleges that 'Defendants,' meaning both Hartford and Selective, jointly did each of these acts. . . . The Court will dismiss Midtown's aiding and abetting claim against Hartford."); *Rosso*, 2016 WL 4013614, at *2 ("Here, there are no allegations that [the adjusters] engaged in any separate . . . conduct that aided or abetted the alleged bad faith. Rosso explicitly alleges that the same actions give rise to his claims of bad faith and aiding and abetting. . . . Similar allegations have been found insufficient by numerous courts in this District."); *Counts*, 2019 WL 13195132, at *2 ("Adger's actions relating to aiding and abetting are not distinguishable from Technology's actions relating to bad faith. . . . Adger was placed in charge of processing Plaintiff's workers' compensation claim; she did not take separate actions to assist Technology in aiding and abetting the primary tort of bad faith. Adger's role in assessing Plaintiff's claim, in and of itself, does not simultaneously form the basis for both the primary tort of bad faith, and the secondary tort of aiding and abetting[.]");

8

*Ortiz*, 2014 WL 1410433, at *1-3 (finding that similar allegations of wrongdoing by all defendants failed to state an aiding and abetting claim); *Lambert*, 2014 WL 5432154, at *3 (allegations that the adjuster filed of a notice of claim status with the ICA without a reasonable basis or an adequate investigation were insufficient to plead aiding and abetting).[4]

### C. The Cases Plaintiff Cites Are Distinguishable or Unpersuasive.

Plaintiff relies on two cases – *Pimal Property* and *Haney* – in which this Court denied motions to dismiss aiding and abetting claims. Each case is distinguishable.

In *Pimal Property*, the defendant's sole argument was that the complaint did not allege facts showing how it "substantially assisted" the insurer's breach of the duty of good faith and fair dealing. 2012 WL 608392, at *6. The Court explained that the test for whether a secondary tortfeasor rendered "substantial assistance" to establish liability as an aider and abettor is whether the assistance made it easier for the breach to occur. *Id.* (citing *Wells Fargo*, 38 P.3d at 27). The Court concluded that the complaint contained allegations sufficient to state a plausible aiding and abetting claim. *Id.* Significantly, however, the defendant did not argue, and the Court did not consider, the "separate action" rule. *See id.*; Doc. 12 at 7-10, Case No. CV-11-02323; *see also Kubli*, 2019 WL 13196105, at *5

---

[4] *See also Clark v. Indem. Ins. Co. of N. Am.*, No. CV-14-02211-PHX-SPL, 2015 WL 13567068, at *2 (D. Ariz. July 31, 2015) ("Plaintiff does not allege that [the third-party administrators] are directly liable for their own conduct; rather, Plaintiff brings a secondary liability claim of aiding and abetting based on Indemnity's direct bad faith conduct. . . . Because there is only one set of facts underlying both Plaintiff's bad faith and aiding and abetting claims, Plaintiff is effectively claiming that [the third party administrators] are liable for aiding and abetting their own tortious conduct."); *Ragaller v. ACE Am. Ins.*, No. CV-15-327-TUC-DCB, 2015 WL 13651768, at *2 (D. Ariz. Oct. 27, 2015) ("[Defendants] argue that ACE's liability stems entirely from [third-party administrator's] acts. [But] the same acts cannot breach the duty of good faith and fair dealing, and also create liability for aiding and abetting."); *Ndwiga v. Plaza Ins.*, No. CV-18-02324-PHX-SPL, 2020 WL 7016448, at *6 (D. Ariz. Mar. 13, 2020) ("The Court finds that Ndwiga has failed to allege facts and actions which are independent and in addition to the facts and actions he alleged in support of his claim of bad faith. Counts II and III of the Complaint repeat the same factual allegations that Ndwiga set forth in Count I. Without more, and under *Lambert* [and] *Ortiz*, [the third-party administrator and adjuster] are entitled to judgment as a matter of law on Ndwiga's claim for aiding and abetting bad faith because Ndwiga failed to allege actions and omissions which are distinct and in addition to the ones giving rise to the claim of bad faith.") (citation omitted).

9

(distinguishing *Pimal Property* because there was no "discussion of the single-actor or separate-conduct rule").[5]

In *Haney*, the third-party administrator argued that the "bad faith and aiding and abetting claims rely upon exactly the same conduct." 2014 WL 1230503, at *4. The Court provided this explanation in denying dismissal of the aiding and abetting claim:

> The factual allegations include failing to conduct a reasonable investigation into Plaintiff's claim and unreasonably delaying and denying Plaintiff's claim. Doc. 1, ¶¶ 14, 20. In her claim for aiding abetting, Plaintiff also alleges that "[the third-party administrator] substantially assisted or encouraged [the insurer] in delaying or denying the claim without a reasonable basis." *Id.*, ¶ 26. The Court concludes that this allegation sufficiently pleads separate action by [the third-party administrator] which could amount to aiding and abetting.

*Id.*

In hindsight and with the benefit of more recent decisions from other courts in this District, the Court erroneously concluded in *Haney* that failing to conduct a reasonable investigation and unreasonably delaying and denying the plaintiff's claim were actions separate from the conduct giving rise to the bad faith claim against the insurer. Indeed, like the allegations in the present complaint, the plaintiff in *Haney* alleged that all defendants committed the acts of bad faith. *See* Doc. 1 ¶¶ 14, 20, Case No. CV-13-02429. And the Court's decision in *Haney* has been fairly criticized for relying on the conclusory allegation that the third-party administrator substantially assisted or encouraged the insurer in delaying or denying the claim without a reasonable basis. *See Kubli*, 2019 WL 13196105, at *5 n.4 (citing *Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action do not suffice")); *see also Ortiz*, 2014 WL 1410433, at *5 ("The Court is

---

[5] Plaintiff's reliance on five other cases – *Morrow*, *Inman*, *Miller*, *Wilson*, and *Temple* – is misplaced for the same reason. In each of those cases, "it appears either that the defendants did not raise the argument that separate conduct is required, or that the district courts simply did not address it." *Kubli*, 2019 WL 13196105, at *5 (citations omitted).

not bound by the holdings in *Haney*, *Inman*, or *Wilson*, and the Court finds the reasoning in *Jones* and *Young* more persuasive."); *Rosso*, 2016 WL 4013614, at *3 (same).[6]

Plaintiff notes that the court in *Hoffman* found a distinction in the defendants' actions because the adjuster "ignored important information" about the claimant's injuries. Doc. 14 at 7. But *Hoffman* relied on *Haney* and *Gastelo*, which the Court finds unpersuasive. *See* 2021 WL 4962648, at *3. What is more, *Hoffman* involved a motion to remand and fraudulent joinder, not a motion to dismiss under Rule 12(b)(6). "[T]he Rule 12(b)(6) standard requires plausibility while fraudulent joinder only requires the possibility of sufficiently pleaded facts to state a claim to relief." *Id.* (citations omitted). Thus, *Hoffman* is procedurally inapposite. *See id.* (remanding the case and finding only that the allegation that the adjuster "exercised independent decision making is sufficient for the state court to *possibly* find that Plaintiffs have sufficiently alleged an aiding and abetting claim") (emphasis added).

Plaintiff also relies on the unpublished decision in *Lipsky v. Safety National Casual Corp.*, No. 1 CA-CV 15-0337, 2017 WL 443525 (Ariz. Ct. App. Feb. 2, 2017). *Lipsky* has no precedential value, but Plaintiff asserts that the decision is "extremely persuasive" on the issue of aiding and abetting. Doc. 14 at 7. The Court does not agree.

*Lipsky* rejected the argument that "because aiding and abetting is a form of secondary liability, there must first be a primary violation by another party, and the defendant must be aware of it." 2017 WL 443525 at *7. But "the *Lipsky* court provided no *reasons* supporting its conclusion," *Kubli*, 2019 WL 13196105, at *4, and its rejection of the argument clearly is erroneous. *See Wells Fargo*, 38 P.3d at 23 ("Because aiding and abetting is a form of secondary liability, there must first be a primary violation by another party, and the defendant must be aware of it."). "[M]ore fundamentally, *Lipsky* never

---

[6] The Court is not persuaded by Plaintiff's citation to *Gastelo* because the court in that case also accepted threadbare allegations of the aiding and abetting elements. 2020 WL 1285912, at *3 ("The Complaint also sets forth allegations consistent with the aiding and abetting cause of action adopted by the Arizona Supreme Court. That is, Wesco was the insurer with the duty to make payments, its agent Ms. Greer had the requisite scienter, and that through her actions and inaction she provided substantial assistance or encouragement for Wesco's alleged breach.").

addressed the separate conduct question. It only reversed the trial court's grant of summary judgment on a bad faith claim, in turn reviving the plaintiff's aiding and abetting claim, which the trial court had summarily dismissed." *Rogers*, 2019 WL 13198123, at *2 (citing *Lipsky*, 2017 WL 443525, at *1, 6-7); *see also Counts*, 2019 WL 13195132, at *2 ("The Court does not find *Lipsky* helpful to Plaintiff's position as it is an unpublished case with no controlling authority, it offers no analysis as to the aiding and abetting claim against the adjuster, and it appears to conflict with controlling, published Arizona authority."); *Bussen*, 2021 WL 778536, at *3 ("[T]he *Lipsky* opinion – which is unpublished and therefore not precedential under the Arizona state court rules – did not even discuss whether there was any separate conduct on behalf of the insurance adjuster to assist or encourage the principal defendant's breach of duty. . . . Because the analysis in *Lipsky* merely glosses over the primary issue before the Court, it is also unpersuasive.").

### D. Punitive Damages.

Intercare moves to dismiss the request for punitive damages because Plaintiff has not stated a valid tort claim for aiding and abetting and has not otherwise alleged the "something more" required for punitive damages. Doc. 13 at 10 (quoting *Rawlings*, 726 P.2d at 577). Plaintiff does not respond, *see* LRCiv 7.2(i), and the Court finds Intercare's argument well taken. *See Lambert*, 2014 WL 5432154, at *3 ("Lambert's failure to state an aiding and abetting claim is fatal to his request for punitive damages[.]"); *Kubli*, 2019 WL 13196105, at *6 (same).

**IT IS ORDERED** that Intercare's motion to dismiss (Doc. 13) is **granted**. The aiding and abetting claim in count two and the request for punitive damages against Intercare are **dismissed**.

Dated this 5th day of March, 2024.

David G. Campbell
Senior United States District Judge